**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

KAMAL TURFAH,

                Petitioner,

v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

                Respondent.

_____/

CASE NO. 2:15-cv-10371

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING RESPONDENTS'
MOTION FOR SUMMARY JUDGMENT AND DENYING
PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

Presently before the Court are Petitioner Kamal Turfah's Motion for Summary Judgment (Doc. 16) and Respondents United States Citizenship and Immigration Service and United States Department for Homeland Security's Motion for Summary Judgment (Doc. 17).  The Court has reviewed all the relevant filings and finds that oral argument will not aid in resolving this dispute.  See E.D. Mich. L.R. 7.1(f)(2).  For the reasons that follow, the Court **GRANTS** Respondents' motion and **DENIES** Petitioner's motion.

## II.    STATEMENT OF FACTS

Petitioner Kamal Turfah is a citizen of Lebanon and has been residing in the United States as a lawful permanent resident ("LPR") for over twenty years.  On September 23, 1995, Petitioner, at the age of 19, was inspected and admitted into the United States on a visa that was derivative of his father's immigration visa.  Petitioner

made no misrepresentation about his visa at the time of entry.  Petitioner's father, the principal immigrant, was admitted to the United States on October 17, 1995, twenty-four days after Petitioner's admission.

On November 30, 2012, Petitioner filed an Application for Naturalization, Form N-400, with United States Citizenship and Immigration Services ("USCIS").  (Doc. 11, Ex. 1).  On April 29, 2014, USCIS denied Petitioner's naturalization application on two grounds: (1) Petitioner was not lawfully admitted as an LPR because he entered the United States before his father; and (2) Petitioner did not possess the requisite good moral character for failure to pay income taxes or accurately report income to the IRS. (Doc. 11, Ex. 2).  USCIS later dismissed the second ground that Petitioner lacks the requisite good moral character but maintains that Petitioner remains ineligible for naturalization on the first ground.  (Doc. 11, p. 8 n.1).

On May 16, 2014, Petitioner timely sought an administrative review of the denial. On December 29, 2014, USCIS issued the review decision affirming the denial.  (Doc. 11, Ex. 3).  With all administrative remedies exhausted, Petitioner filed the current suit in this Court on January 28, 2015.  The parties filed the instant cross motions for summary judgment on October 16, 2015.

## III.   STANDARD OF REVIEW

Petitioner filed his complaint in this matter after an administrative review that affirmed the denial of his naturalization applications.  Accordingly, he is entitled to seek judicial review of the administrative review of denial.  8 U.S.C. § 1421(c).  "Such review shall be *de novo*, and the court shall make its own finding of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing *de novo* on the application."

2

Id.  It is proper to conduct this review within the context of a Rule 56 motion for summary judgment.  Lucaj v. Dedvukaj, 13 F. Supp. 3d 753, 764-65 (E.D. Mich. 2014).

Federal Rule of Civil Procedure 56(a) authorizes a court to grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  There is no genuine issue of material fact if there is no factual dispute that could affect the legal outcome on the issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In the present case, the parties agree that there is no factual dispute, and the only issue before the Court is a question of law: whether Petitioner was "lawfully admitted" to the United States in compliance with 8 U.S.C. §§ 1427 and 1429.

## IV.   ANALYSIS

### A. Requirements for Naturalization

Generally, a naturalization applicant must demonstrate, *inter alia*, good moral character; the ability to read, write and speak English; a basic knowledge of United States history and government; and five years of continuous residence in the United States.  See 8 U.S.C. § 1423(a), § 1427(a).  Further, as an initial matter, "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of [the Immigration and Naturalization Act]."  8 U.S.C. § 1429.  "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20).  The burden is on the person seeking naturalization to establish his or her eligibility.  Berenyi v. District

3

Director, Immigration & Naturalization Servs., 385 U.S. 630, 637 (1967); Sakarapanee

v. Dep't of Homeland Sec., 616 F.3d 595, 597 (6th Cir. 2010).  This burden requires the

applicant to prove, by a preponderance of evidence, that he or she meets all of the

requirements of naturalization and is thus eligible to become a citizen of the United

States.  See 8 C.F.R. § 316.2(b).

An applicant who has successfully obtained permanent resident status is not

necessarily "lawfully admitted for permanent residence" as defined in the statute.  See

De La Rosa v. United States Dep't of Homeland Sec., 489 F.3d 551, 554 (2d Cir. 2007).

"[A]n alien whose status has been adjusted to lawful permanent resident but who is

subsequently determined in an immigration proceeding to have originally been ineligible

for that status has not been 'lawfully admitted for permanent residence' because the

'alien is deemed, ab initio, never to have obtained lawful permanent resident status.'"

Id.  To demonstrate lawful admission, a naturalization applicant must prove that he or

she has "complied with both the procedural and substantive legal requirements in place

at the time of admittance."  Beleshi v. Holder, No. 12-11681, 2014 WL 4638359, at *6

(E.D. Mich. Sept. 16, 2014); Lucaj v. Dedvukaj, 13 F. Supp. 3d 753, 766 (E.D. Mich.

2014).  This is because "[t]he natural reading of 'lawful' connotes more than just

procedural regularity; it suggests that the substance of an action complied with the

governing law."  Walker v. Holder, 589 F.3d 12, 20 (1st Cir. 2009); De La Rosa, 489

F.3d at 554; Savoury v. United States Attorney Gen., 449 F.3d 1307, 1313 (11th Cir.

2006); Arellano-Garcia v. Gonzales, 429 F.3d 1183, 1186-87 (8th Cir. 2005); Matter of

Longstaff, 716 F.2d 1439, 1441 (5th Cir. 1983).

**B.  The Present Case**

In the present case, USCIS contends that Petitioner was not "lawfully admitted for permanent residence."  Specifically, Petitioner's immigrant visa was derivative of his father's principal immigrant visa.   As the child of a parent who is granted an immigrant visa, he was entitled to the same status "if accompanying or following to join" the parent. 8 U.S.C. § 1153(d).  The implementing regulation provides that "[a]n 'accompanying' relative may not precede the principal alien to the United States."  22 C.F.R. § 40.1(a)(2).  USCIS takes the position that, by entering the United States twenty-four days before his father, Petitioner failed to comply with the relevant legal requirements.

It is indisputable that Petitioner's admission to the United States was procedurally defective.  The statutory regulation unambiguously states that an accompanying relative with a derivative visa may not precede the principal visa holder into the United States. 22 C.F.R. § 40.1(a)(2).  Case law also makes clear that a relative with a derivative visa may not precede the principal visa holder into the United States.  See Matter of Khan, 14 I. & N. Dec. 122, 123 (B.I.A. 1972) (confirming that "[a]n accompanying relative may not precede the principal alien to the United States" and finding that "the validity of respondent's immigrant visa depended on the continued immigrant status of his father, the principal alien."), aff'd sub nom. Santiago v. Immigration & Naturalization Serv., 526 F.2d 488, 490 (9th Cir. 1975) (rejecting petitioners' argument that the statutory language "accompanying or following to join" should be construed as encompassing "preceding," holding that "[t]he plain language of the statute is designed to assure that those aliens who derive their preference cannot exercise their right to enter until the person from whom they derive their preference has actually entered.").

5

First, Petitioner argues that both his father's principal visa and his own derivative visa were secured through valid means and not through fraud or misrepresentation. Many of the cases involving government challenges to LPR status involve immigrants who procured their admission to the United States through fraud or misrepresentation. See, e.g., Gallimore v. Attorney Gen., 619 F.3d 216, 223 (3d Cir. 2010) (petitioner obtained his LPR by misrepresenting his past criminal convictions); Shin v. Holder, 607 F.3d 1213, 1217 (9th Cir. 2010) (holding that innocent petitioners who obtained derivative LPR status by virtue of their mother's fraudulently-obtained principal LPR status "were not substantively qualified for admission as LPRs."). However, case law has broadly held that any person who has been erroneously granted LPR status, for whatever reason, has not been lawfully admitted for permanent residence. See, e.g., Walker, 589 F.3d at 19 (citing In re Koloamatangi, 23 I. & N. Dec. 548, 550 (B.I.A. 2003) ("[T]he term 'lawfully admitted for permanent residence' did not apply to aliens who had obtained their permanent resident status by fraud, *or had otherwise not been entitled to it*." (emphasis supplied))). Indeed, case law has also held that where, as here, LPR status is obtained because of a negligent mistake made by the government, the admitted alien cannot be deemed lawfully admitted for permanent residence. Arellano-Garcia, 429 F.3d at 1186. Though this outcome would penalize an individual for what amounts to the government's oversight, the Court is constrained to follow this precedent.

Next, Petitioner urges the Court to follow Agarwal v. Napolitano, 663 F. Supp. 2d 528 (W.D. Tex. 2009). In Agarwal, the applicants filed suit for district court review of their naturalization applications under 8 U.S.C. § 1447(b). Id. at 530, 532. The

government argued that the applicants never properly obtained lawful permanent resident status because they failed to pay an enhanced fee required under 8 U.S.C. § 1255(i).  Id. at 537.  First, the Court first noted the dissonance between the government's admission that the applicants had procured LPR status and its stance that the applicants were not lawfully admitted for permanent residence.  Id. at 538.  Second, the court determined that the government's failure, for at least a decade, to provide the applicants statutorily required notice of the deficient fees precluded it from relying on the nonpayment as a barrier to naturalization.  Id. 538-39. ("Should their position now be the worse because the agency erroneously *granted* the petitions in 1997?  That result should not be permitted, as it would essentially gut the notice provision by allowing the CIS to grant and then immediately rescind LPR status without providing the required notice . . . .").  The court specifically reasoned that, "[h]ad the [LPR] applications simply been denied [a decade earlier] for failure to pay the § 1255(i) enhanced fee," the defect would likely have been remedied through the proper mechanism.  Id.  Lastly, the Court found that in order to revoke LPR status, the government must follow the formal procedure for revocation or rescission – but that the five-year statute of limitations precluded the government from revoking the applicants' permanent resident status.  Id. at 539-40.  Consequently, the court rejected USCIS's argument and held that the applicants' failure to pay enhanced fee did not render applicants ineligible for naturalization.  Id. at 543.

Although the present case shares many factual similarities with Agarwal, the Court is compelled to depart from the reasoning and outcome of that case.  First, the Court rejects the finding that tension exists between admitting that an individual was

7

granted LPR status and challenging the lawfulness of that admission.  There is nothing inconsistent between the government's position that Petitioner was mistakenly granted LPR status and its position that Petitioner was not lawfully admitted to the United States.  Indeed, the overwhelming weight of authority relies on the notion that once an alien's original ineligibility for LPR status is determined, that alien "is deemed, *ab initio*, never to have obtained lawful permanent resident status."  See Koloamatangi, 23 I. & N. at 551.  Second, the outcome of Agarwal was premised primarily on the fact that the government had substantially prejudiced the applicants' position by failing to fulfil its statutory obligation to provide notice of the enhanced fee requirement.  Here, there is no indication that the government, though negligent, failed to abide by any statutory obligations owed to Petitioner.  Lastly, to the extent that Agarwal questions the government's ability to challenge LPR status without a formal rescission proceeding after the five-year statute of limitations has expired, this analysis must be rejected.  By denying Petitioner's application for naturalization because he was not lawfully admitted, the government is not retroactively attempting to revoke Petitioner's LPR status, as this status was not granted in the first place.  See Walker, 589 F.3d at 22.  Accordingly, the Court declines to follow Agarwal.

Finally, Petitioner argues that the present circumstances differ from the factual scenarios confronted in other cases, such as Matter of Khan, involving derivative visa holders preceding principal visa holders into the United States.  In Matter of Khan, the respondent, an alien child holding a visa derivative of his father's principal visa, preceded his father to the United States.  14 I. & N. Dec. at 123.  The respondent's father died in Pakistan without ever entering the United States himself, and the

8

respondent was unaware of the death until after being erroneously admitted as a permanent resident.  Id.  The Board of Immigration Appeals ("BIA") held, in part, that the respondent's LPR status was invalid, as "the validity of respondent's immigrant visa depended on the continued immigrant status of his father, the principal alien.  Death terminated the father's immigrant status and thereby stripped respondent of his status."  Id. at 124.

Petitioner seeks to distinguish the present case from Matter of Khan because his father successfully and lawfully entered the United States.  Indeed, this fact is material, as the BIA distinguished such a case from Matter of Khan pursuant to a policy memorandum promulgated by the Immigration and Naturalization Service.  Matter of Naulu, 19 I. & N. Dec. 351, 352-53 (B.I.A. 1986).  In that decision, the BIA held:

> The memorandum thus makes clear that the right of a derivative beneficiary to permanent resident status is wholly dependent upon that of the principal alien and may not be exercised *unless and until* the principal alien becomes a permanent resident.  However, *once the principal alien gains permanent residence, his spouse or child is not precluded as a matter of law from adjusting status* as a person "accompanying or following to join" by reason of having physically preceded the principal alien to this country as a nonimmigrant.

Id. at 353 (emphasis supplied).  Accordingly, the fact that Petitioner preceded his father into the United States does not preclude him from adjusting his status and becoming a lawful permanent resident at this time.  Plaintiff must therefore petition respondents for an adjustment of status granting him LPR status, and the government may decide whether it is appropriate to issue this status *nunc pro tunc*, or retroactively.  Until Petitioner is able to adjust his status, however, the Court – though far from unsympathetic to Petitioner's dilemma – is regrettably constrained to find that he is ineligible for naturalization at the present time.

## V.     CONCLUSION

For the reasons stated, the Court **GRANTS** Respondents' Motion for Summary Judgment and **DENIES** Petitioner's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Date:   January 29, 2016                          s/Marianne O. Battani
                                                  MARIANNE O. BATTANI
                                                  United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on January 29, 2016.

                                                  s/ Kay Doaks
                                                  Case Manager